IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**; and **STATE OF MISSISSIPPI**     **PLAINTIFFS**

vs.                                                      CAUSE No.: 3:19-CV-289-HTW-LGI

**DENBURY ONSHORE, LLC**                                                **DEFENDANT**

**MEMORANDUM OPINION ACCOMPANYING
ORDER FOR FINAL TERMINATION OF CONSENT DECREE**

Between 2008 and 2014, various surfaces of public waters in the States of Mississippi and Alabama adopted a sludgy film, tainted by spillage from dozens of oil wells in fields owned or operated by Defendant Denbury Onshore, LLC ("Denbury"). Denbury, spurred by the prospect of stiff penalties should it have failed to report these spills under the Clean Water Act (*see* 33 U.S.C. §§ 1251 et seq.), brought these admittedly undesirable occurrences to the attention of the United States Environmental Protection Agency ("EPA"). An expensive clean-up ensued.

Concerned with perceived weaknesses in Denbury's planning, personnel training, and mechanical infrastructure, the United States of America ("the Government") and the State of Mississippi ("the State") (collectively, "the plaintiffs") brought suit against Denbury in this Court in 2019. The plaintiffs contended that Denbury had violated the Clean Water Act and the Mississippi Air and Water Pollution Control Law (see Miss. Code Ann. §§ 49-17-1 et seq.) and failed to comply with "Spill Prevention Control and Countermeasure Plan Requirements" and "Facility Response Plan Requirements" set forth by federal regulation. The plaintiffs sought monetary penalties against Denbury and injunctive orders requiring Denbury to take certain preventative measures and comply with oil pollution prevention regulations.

Within months of filing suit, negotiations between Denbury and the EPA bore fruit, resulting in Denbury's consent to be bound by a judicial decree ("the Consent Decree") under which Denbury would pay to the plaintiffs over three million dollars, implement a "Mechanical Integrity Program, … designed to prevent all discharges of oil," and take other steps to prevent spillage and demonstrate compliance with its legal requirements.

Under the Consent Decree's terms, Denbury could request that the said decree be terminated (with respect to the various oil fields at issue) after averring, with supporting documentation, that Denbury had "substantially complied" with the terms of the Consent Decree and paid the agreed civil penalties. This Court signed the Consent Decree, and the docket in this matter stood still for over five years.

In January 2025, the Government filed a Joint Stipulation and Notice, requesting that this Court enter an order terminating the Consent Decree. The Government noted that Denbury had requested such termination, and that the Government and the State agreed that this result was appropriate—stipulating that Denbury had complied with the terms of the Consent Decree and paid the necessary penalties. At this Court's prompting, Denbury filed over 300 pages of supporting documentation for their request to terminate the Consent Decree. This Court also held a hearing at which the parties affirmed their agreement that Denbury had brought its practices into compliance with the Clean Water Act, enacted preventative measures to avoid future spills, and indeed avoided spills. Counsel on both sides referred to the progress as a "success story."

Based on the agreement and representations of counsel for the parties, this Court signed the attached Order for Final Termination of Consent Decree.

**SO ORDERED AND ADJUDGED** this the ___9th___ day of _____July_____, 2025.

                                              **/s/ HENRY T. WINGATE**
                                              **UNITED STATES DISTRICT COURT JUDGE**